**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | MDL Docket No. 1953 |
| HEPARIN PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | |
| _____ | ) | |
| | ) | |
| **ROBERT YEAZEL, JR., as Executor of** | ) | CASE No.    09HC60186 |
| **the Estate of CAROL ANN YEAZEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | ORDER |
| | ) | |
| **BAXTER HEALTHCARE CORP.,** *et al.*, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

This is a products liability suit arising from Carol Ann Yeazel's death following the administration of the anticoagulant prescription drug heparin. On behalf of Carol Yeazel, plaintiff Robert Yeazel, Jr., the executor of her estate, brings this suit alleging that the defendants' contaminated heparin caused Carol Ann's death.

Pending is defendants motion to dismiss portions of the complaint, in particular claims asserting fraudulent misrepresentation and survivorship and those seeking punitive damages. [Doc. 70]. For the reasons that follow, the motion shall be granted.

**Background**

It is unnecessary to re-state the background surrounding the contamination and subsequent recall of the defendants' product.

It is uncontested that Yeazel received treatment, which included the administration of heparin, at Mount Carmel West Hospital for her end-stage renal disease. Afterward, Yeazel participated in outpatient dialysis through Renal Care Group, where she also received heparin. On December 23, 2007, a physician at Renal Care Group ordered that Yeazel receive a bolus dose of 4,000 units of heparin and a 500 unit maintenance dose of heparin every hour. After she received her second dose of heparin that day, Yeazel suffered from diastolic hypotension, edema, nausea, vomiting, and diarrhea. As a result, Yeazel ended her dialysis session early.

After Yeazel returned home, her symptoms became worse, and she called 911. Yeazel lost consciousness, and paramedics drove her to Fayette County Memorial Hospital where the doctors placed her on advanced cardiac life support. She never regained consciousness and died later that day.

Following Yeazel's death, her son, as executor of the estate, filed a complaint on Yeazel's behalf alleging defendants' contaminated heparin caused her death.

During a status conference held February 17, 2011, I granted plaintiff leave to file an amended complaint to withdraw any preempted common law negligence claims. [Doc. 66]. Plaintiff filed his first amended complaint on February 21, 2011. [Doc. 68]. Defendants challenge portions of this amended complaint.

### Standard of Review

A claim survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,    U.S.   , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

2

has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S.Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

I granted leave to plaintiff to file an amended complaint to withdraw any preempted common law negligence claims. Plaintiff's amended complaint asserted that the defendants "intentionally and/or negligently made material false and misleading representations," specifically that the product was adequately tested and safe and effective for its intended use. It also stated a claim under the survivorship statute, and further requested punitive damages in excess of twice the compensatory damages award. [Doc. 68].

Defendants challenge these claims. For the reasons that follow, I conclude that plaintiff did not meet the requisite requirements to establish a claim for fraud. I also conclude that the statute of limitations bars plaintiff's survivorship claim and punitive damages are not available to plaintiff.

### 1. Fraudulent/Negligent Misrepresentation

Defendants challenge the fifth cause of action in plaintiff's amended complaint on the grounds that:1) the Ohio Product Liability Act (OPLA), O.R.C. § 2307.71 *et seq.* preempt her claim; and 2) the allegations fail to satisfy the particularity requirement applicable to claims of fraud under Federal Rule of Civil Procedure 9(b).

Plaintiff responds that the OPLA does not abrogate his claim because neither fraud nor negligent misrepresentation fit neatly into the definition of a common law product liability claim.

The OPLA applies to "recovery of compensatory [or punitive] damages based on a product liability claim." *See Delahunt v. Cytodyne Techs*, 241 F.Supp.2d 827, 842 (S.D. Ohio 2003)(citing Ohio Rev. Code § 2307.72(A),(B)). Pursuant to O.R.C. §2307.71(A)(13), a "product liability claim" is defined, in pertinent part, as:

> (13) "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> > (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> >
> > (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
> >
> > (c) Any failure of that product to conform to any relevant representation or warranty.

The statute specifically applies to drugs which are "prescription drugs that are prescribed or dispensed by a physician or any other person who is legally authorized to prescribe or dispense a prescription drug." O.R.C. §. 2307.71(A)(4).

The negligence portion of plaintiff's claim is clearly preempted by OPLA. The actionable conduct that forms the basis of the negligence claim—negligent testing, marketing, and failure to

4

warn—is the same conduct that the OPLA defines as giving rise to a "products liability claim." *See* O.R.C. § 2307.71(A)(13); *Tompkin v. American Brands*, 219 F.3d 566, 575 (6th Cir. 2000) (finding claim for negligence for the manner in which cigarettes were tested, researched, sold and promoted fell under the auspices of the OPLA); *Delahunt v. Cytodyne Techs*, 241 F. Supp. 2d 827, 843–44 (S.D. Ohio 2003) (finding the OPLA preempted the plaintiff's claim that the defendant was negligent for fraudulently marketing its product by misrepresenting its dangerousness); *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F. Supp. 228, 230 (N.D. Ohio 1993) (allegations that there was negligence in how cigarettes were "tested, researched, sold, and promoted" fell under OPLA).

Plaintiff attempts to salvage this claim by asserting it is not the duty to warn that is implicated in the pleading, but the duty "not to deceive." Accepting plaintiff's interpretation dispatches any negligent representation claim, as the duty not to deceive is the duty to refrain from fraud.

I need not address defendants arguments that the OPLA preempts plaintiff's fraud claims because I find plaintiff has not plead that claim with particularity which Fed. R. Civ. P. 9(b) demands.

"In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938)). The Federal Rules of Civil Procedure therefore govern the pleading requirements in this case.

Under Rule 9(b), plaintiffs are required to plead fraud with particularity. The purpose of Rule 9(b) is to "provide a defendant fair notice of the substance of a plaintiff's claim in order that the

5

defendant may prepare a responsive pleading." *U.S. ex. Rel. Bledsoe v. Community Health Sys. Inc.*, 501 F.3d 493, 503-05 (6th Cir. 2007).

To satisfy the particularity requirement, "a plaintiff must at minimum allege the time, place, and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1215-16 (6th Cir. 1984); Fed. R. Civ. P. 9(b).

Here, the plaintiff alleges that the defendants made false representations of its heparin product in its 10-K SEC filing on February 28, 2007, which stated that the product was "safe and effective for its intended use."[1] [Doc. 1 at 8].

Even accepting that this statement is false, Rule 9(b) requires that allegations of fraudulent misrepresentation are "made with a sufficient factual basis to support an inference that they were *knowingly* made." *Advoc. Org. For Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D. Mich.1992)) (emphasis added). The plaintiff must set forth facts to support its claim that the defendant intended to "deceive, manipulate or defraud" or that its statements were in "willful or reckless disregard for the truth." *Peltz v. Northern Ohio Bank, et al.*, 430 F. Supp 382, 384 (N.D. Ohio 1976) (explaining that the plaintiff failed to prove that the defendant had actual knowledge of misrepresentations for its fraudulent statement).

Here, as in *Peltz*, *supra*, at 385, the plaintiff's complaint is short on specifics. He fails to "specify when, where, or how" the defendants learned of the heparin contamination or the person or persons who had such knowledge. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563-66 (6th Cir.

---

[1] The Food and Drug Administration's findings in July 2008 links the heparin that the defendants manufactured and distributed to the deaths of 246 patients. It has not yet been proven, however, whether the defendants' heparin was the cause of Yeazel's death.

2003). Moreover, the plaintiff does not offer any factual basis to support his allegations that the defendants "knew, or should have known, that their products created an unreasonable risk of serious bodily injury or death to consumers." [Doc. 1 at 20]; *see SynQor, Inc v. Artesyn Technologies, Inc.*, 2010 WL 3768093 (E.D. Tex.) (explaining that the plaintiff failed to meet the requisite requirements to prove liability for fraudulent statements).

I find that the plaintiff's complaint does not give rise to a reasonable inference that the defendants' made the statements about the product knowing that they were false, or with the intent to deceive purchasers and consumers of the drug. To survive a motion to dismiss, plaintiff's claim must provide "more than labels and conclusions" that the defendants knew that it was making false statements. *Twombly*, *supra*, 550 U.S. at 554; *see In re CitiGroup Inc. Bond Litig.*, 723 F. Supp.2d 568 (S.D.N.Y. 2008) (fraud-based claims dismissed for failure to state a claim). Plaintiff's complaint does not satify the particularity of pleading standard of Fed. R. Civ. P 9(b), and therefore cannot survive a motion to dismiss.

## 2. Survivorship

The defendants move to dismiss the plaintiff's survivorship claim, which plaintiff expressly asserts in the amended complaint, on the ground that the statute of limitations bars that claim. The plaintiff alleges that the survivorship claim was implicit in the original complaint's wrongful death claim, and that its claim therefore falls within the applicable statute of limitations.

A wrongful death claim is asserted on behalf of the decedent's survivors, "distinct and apart from the right of action which the injured person may have had." *Wingrove v. Forshey*, 230 F. Supp.2d 808, 826 (S.D. Ohio 2002).

A survivorship claim, by contrast, is brought on behalf of the decedent herself, to assert the same cause of action that the decedent would have asserted on her own behalf. *Dickerson v. Thompson*, 89 Ohio App. 3d 399, 787 (1993) ("Such actions are instituted by the executor or administrator for the benefit of the decedent's estate, and are distinct from an action for wrongful death."). Although wrongful death and survivorship claims "share many of the same issues" and are "asserted against the same defendant," they are "distinct claims that belong to separate individuals." *Peters v. Columbus Steel Castings Co.*, 115 Ohio St. 3d 134, 137–38 (Ohio 2007). "[T]here is no mistaking the independent nature of these actions." *Id.* at 138.

Plaintiff did not specifically plead a survivorship claim in his original complaint. He filed the amended complaint  three years after Carol Ann Yeazel's death. The statute of limitations for such cases is two-years. *See* O.R.C. § 2305.10(A) ("[A]n action based on a product liability claim and an action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues.").

Plaintiff argues, however, that the original complaint "clearly sets forth a claim for the personal injuries that decedent Carol Yeazel suffered prior to death." The original complaint sought "compensatory damages for the injury and harm, ultimately resulting in Decedent Yeazel's death, including but not limited to conscious pain and suffering endured by Decedent prior to her death, medical expenses, loss of enjoyment of life, and loss of earnings." [Doc. 1]. The complaint also requested punitive damages based on the allegation that defendants "demonstrate[d] a flagrant disregard for human life, malice, and aggravated and egregious fraud." *Id.*

8

Federal pleading standards require that a complaint provide "fair notice of what the claim is and the grounds upon which it rests." *Drake v. Detroit*, 266 F. App'x 444, 450, 2008 WL 482283 (6th Cir.) (unpublished disposition) (quoting *Twombly*, 550 U.S. at 555).

It is true that plaintiff's original claim included the injuries suffered by Carol Yeazel. But as defendants point out, plaintiff needed to plead such injuries to satisfy the elements of a wrongful death claim. Under Ohio law, "[i]n order to prevail in a wrongful death cause of action, the personal representative of the decedent must prove," among other things, "a wrongful act, neglect or default of defendant which proximately caused the death and which would have entitled the decedent to maintain an action and recover damages if death had not ensued." *Whitfield v. Bartek*, No. 2007-T-0078, 2008 WL 625217, *4 (Ohio App. Ct. Mar. 7, 2008). The inclusion of the personal injury allegations therefore did not put defendants on notice of the additional survivorship claims.

Plaintiff's claim for punitive damages in the original complaint is also insufficient to provide fair notice of a survivorship claim. As defendants point out, the request for punitive damages in the original complaint occurred in ¶ 100 of Count VII, entitled "Wrongful Death Pursuant to O.R.C. § 2125 *et seq.*" Defendants would be required to infer from the fact that the wrongful death statute does not entitle plaintiff to punitive damages that the plaintiff was not improperly pleading punitive damages but was thereby advancing a survivorship claim. Fair notice requires more.

I find that plaintiff's original complaint did not give fair notice of a survivorship claim. Plaintiff's survivorship claims were therefore first alleged in the revised complaint, and are therefore barred by the two-year statute of limitations of § 2305.10(A).

### 3. Punitive Damages

9

Defendants argue for the first time in their reply that because punitive damages are not available in the plaintiff's remaining wrongful death action, his claim for punitive damages should be dismissed. While it is true that punitive damages are not available on plaintiff's wrongful death claim, plaintiff seeks punitive damages pursuant to all his claims, not just those defendant here seeks to strike. As the availability of punitive damages on the remainder of these claims is not now before me, I decline to address it at this time.

I do, however, agree with defendants that Ohio law precludes an award in excess of the statutory cap, and plaintiff therefore may not seek punitive damages in excess of twice the compensatory damages award. *See* O.R.C. §§ 2315.21(D), 2307.80(E); *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 491 (2007).

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion to dismiss [Doc. 70] be, and the same hereby is granted. [Doc. 70].

So ordered.

/s/ James G. Carr
United States District Judge